**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-4002-10-CR-C-NKL |
| | ) | |
| CYRUS OTIS POPE, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case was referred to the undersigned United States Magistrate Judge for processing in accord with the Magistrate Act, 28 U.S.C. § 636, and W.D. Mo. R. 22.

On December 4, 2006, a hearing was held on the respective motions for bill of particulars, severance, disclosure of confidential informants, and suppression filed by codefendants Cyrus Pope, Douglas Comstock, Calvin Corley and Olan George. Cyrus Pope appeared in person and was represented by counsel Michael Gorla. Douglas Comstock appeared in person and was represented by counsel Kimberly Shaw. Calvin Corley appeared in person and was represented by counsel Bryan Scheiderer. Olan George appeared in person and was represented by counsel Stan Clay. All defendants had the opportunity to present evidence and to cross-examine any witnesses.

Defendant Pope's motions seeking suppression of intercepted wire communications and evidence seized from his residence were addressed at the hearing. DEA Case Agent Steve Mattas testified as to the facts pertaining to these motions. Agent Mattas' testimony has not been seriously challenged by defendants and the court finds Agent Mattas to be a credible witness.

### Motion for Suppression of Intercepted Wire Communications

Defendants raise two challenges to the intercepted wire communications: (1) necessity; and (2) minimization.

*Necessity*

Title 18, United States Code, § 2518(1)(c), provides that an application for an order authorizing a wiretap must include, among other things, "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." This requirement seeks to insure that wiretaps are not routinely employed as the initial step in an investigation. United States v. Thompson, 210 F.3d 855, 858-59 (8th Cir. 2000).

As to the issue of necessity in the instant case, it is clear from the testimony of Agent Steve Mattas that at the time the wiretap was authorized, the investigation had been under way for some time and agents did not know the full scope of the conspiracy and lacked important corroboration for their cases against a number of the defendants in the case. The fact that agents had already collected evidence from other sources does not mean that further evidence was unnecessary or that it was not proper to investigate the full scope of the conspiracy in which defendants were involved. The Government does not have to stop its investigation once it has a pretty good case; rather, the Government can utilize a wiretap to solidify its case with strong evidence which will convince a jury of defendant's guilt beyond a reasonable doubt. The rule of necessity does not require that a wiretap be absolutely necessary or that information cannot be obtained from other sources, or that law enforcement officers exhaust "specific" or "all possible" investigative techniques before wiretap orders could be issued. United States v. Matya, 541 F.2d 741, 745 (8th Cir. 1976). The Government is not required to "explain away all possible alternative techniques, since the Government is not required to use a wiretap only as a last resort." Id.

The issue is not what the Government knew, but what they did not know. The Government sought a wiretap in order to acquire useful evidence to strengthen its case against all participants involved in the conspiracy, and to acquire evidence about the means of transportation used, the storage methods employed, the individuals involved in the distribution process, and how drug proceeds were being utilized. The affidavit submitted by Agent Mattas in support of the wiretap warrant set forth in great detail the investigative techniques that had been considered, specific investigative measures undertaken over the prior two years, the limitations of such measures, and why an order allowing interception of wire communications should be

issued.  The Eighth Circuit has held that if law enforcement officers are able to establish that conventional investigatory techniques have not been successful in exposing the full extent of the conspiracy and the identity of each coconspirator, the necessity requirement is satisfied.  United States v. Jackson, 345 F.3d 638, 644 (8th Cir. 2003).  See also United States v. Maxwell, 25 F.3d 1389, 1394 (8th Cir. 1994); United States v. Macklin, 902 F.2d 1320, 1327 (8th Cir. 1990) (necessity requirement met where affidavit demonstrated that traditional investigative procedures failed to reveal full conspiracy or sufficient evidence to prosecute identified conspirators).

The Court finds the application for wiretap authorization established the necessity for seeking a wiretap authorization, and the order of authorization was proper.

*Extension of Wiretap Order*

An application for an extension of a wiretap order must include "a statement setting forth the results thus far obtained from the interception, or a reasonable explanation of the failure to obtain such results."  18 U.S.C. § 2518(1)(f).  In addition, the "issuing court is required to make the same findings for an extension order as it is for an original order."  United States v. Brone, 792 F.2d 1504, 1506 (9th Cir. 1986) (citing United States v. Giordano, 416 U.S. 505, 530 (1974); 18 U.S.C. § 2518(5)).

Pope claims that the application for the extension of the wiretap order was facially insufficient because it, like the initial affidavit, failed to meet the necessity requirement.  Pope offers no specific argument, but makes the claim that the extension was unnecessary and gratuitous because the Government, by then, clearly had all the evidence needed to prosecute its case.

A review of the affidavit in support of the application for a thirty-day extension of wiretap authorization reveals that the Government established the necessity for further wire interception.  The affidavit in support of the extension states that due to technical problems and other developments, there was a limited time in June 2005 during which officers could monitor all pertinent conversations conducted by the Rodebaugh organization.  The affidavit further stated that continued interception was needed to accomplish the goals of the investigation, namely to expose the full scope of the conspiracy.  The affidavit further articulated why alternative investigative techniques were insufficient to accomplish these investigative goals.  A wiretap can be lawfully extended in order to allow investigative officers to fully develop the

3

extent of a conspiracy and the identity of the conspirators.  United States v. Nguyen, 46 F.3d 781, 783 (8th Cir. 1995).  See also United States v. Davis, 882 F.2d 1334, 1344 (8th Cir. 1989) (reliance on telephones, distrust of confederates, and use of specialized jargon rendered normal investigative techniques impractical, and broad scope and complexity of operation compounded the investigation, thus extension of wiretap lawful).

*Minimization*

Defendant Pope claims that investigators failed to properly minimize the wire interceptions.  In support of his claim, Pope sets forth statistical information reflecting the number of telephone conversations minimized relative to the total number intercepted.  He further sets forth four conversations which he claims should have been minimized.

The Government argues Pope's claim of improper minimization must fail because he lacks standing to challenge this issue, and further, even if he possessed standing, his claim would still fail because the Government's efforts to minimize in this case were reasonable, given the scope of the conspiracy being investigated, the extensive judicial oversight that occurred, the length of the calls being monitored, and the fact that the calls contained coded or ambiguous language.

The Court finds that defendant Pope has standing to challenge the wire communications intercepted by the Government, but only those to which he was a party.  Thus, the issue is whether the Government complied with the minimization requirement of section 2518(5) as to those conversations.  Minimization is determined by an objective reasonableness standard.  Scott v. United States, 436 U.S. 128, 137-38 (1978); United States v. Macklin, 902 F.2d 1320, 1328 (8th Cir. 1990).  When determining whether the Government's surveillance was reasonable, "a reviewing court must consider a variety of factors, including the scope of the enterprise, the agent's reasonable expectation of the content of a call, the extent of judicial supervision, length and origin of a call, and use of coded or ambiguous language."  Macklin, 902 F.2d at 1328.  More extensive wiretapping is reasonable when the investigation focuses on determining the scope of a widespread conspiracy.  Scott, 436 U.S. at 1340.  This is also true when the conversations are in the jargon of the drug trade.  United States v. Losing, 539 F.2d 1174, 1180 (8th Cir. 1976); United States v. Daly, 535 F.2d 434, 439 (8th Cir. 1976); United States v. Davis, 882 F.2d 1334, 1345 (8th Cir. 1989).  The Government's conduct can be reasonable even if the

4

total number of conversations intercepted contained a high percentage of nonpertinent calls. Scott, 436 U.S. at 140; United States v. O'Connell, 841 F.2d 1408, 1417 (8th Cir. 1989).

In this case, the testimony of Agent Mattas is found to be credible. He reviewed all calls and attempts were made to minimize whenever possible. However, for a number of legitimate reasons, many conversations were not minimized.

First, most conversations could not immediately be minimized because the conversations started with small talk before drug trafficking was discussed. Thus, agents were required to listen for a minute or two to get past the small talk to be able to determine whether a conversation was pertinent to the drug conspiracy investigation.

Second, most conversations related to drug trafficking were in code; therefore, it was difficult for agents to determine immediately whether a given conversation was about drug trafficking. For example, investigators determined that participants in the conspiracy frequently referred to car parts as code for narcotics or money.

Third, approximately fifty percent of monitored telephone calls were one minute or less in duration, and approximately eighty percent were two minutes or less. Thus, due to the short duration of these calls, in conjunction with participants beginning their conversations with small talk, and using code language, minimizing these calls was impossible.

Further, although the records indicate that only seven percent of the 3,600 monitored calls were minimized, that is partly because of the short duration of eighty percent of those calls. Minimization was really only practical in about 720 of the 3,600 calls. Since 252 calls were minimized and only about 720 were realistically capable of minimization, the percent of minimized calls is closer to 35 percent.

Defendant Pope has established no basis to suppress evidence obtained pursuant to the wiretaps authorized in this case, based on officers' failure to employ proper minimization procedures. Agents were investigating a wide-ranging drug conspiracy involving a number of participants. Agents monitoring the calls were properly trained on minimization. The procedures employed by monitoring agents to minimize interception of nonpertinent conversations were reasonable. The Court need not address the issue of remedy, absent a finding of failure to minimize. There is no evidence that the Government failed to minimize calls to which defendant Pope was a party.

**Evidence Seized from Defendant's Residence**

Defendant seeks to suppress all evidence seized from the search of his residence, citing (1) that the search warrant lacked particularity and is over broad; (2) supporting affidavit fails to establish probable cause; and (3) the search warrant was illegally executed.

*Particularity of Warrant*

The Fourth Amendment prohibits "general warrants" in an effort to prevent exploratory rummaging in a person's belongings by requiring that a "particular description" of the thing to be seized be stated in the warrant. Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971). The constitutional standard for particularity of description in a search warrant is met if the description is sufficiently definite so as to enable the officer with the warrant to reasonably ascertain and identify the place to be searched and the objects to be seized. Steele v. United States, 267 U.S. 498, 503-04 (1925); United States v. Davis, 557 F.2d 1239, 1248 (8th Cir. 1977); United States v. Johnson, 541 F.2d 1311, 1313 (8th Cir. 1976). Accordingly, the degree of specificity required is flexible, and may vary depending on the circumstances and the type of items involved. United States v. Davis, 542 F.2d 743, 745 (8th Cir. 1976). The underlying measure of adequacy in the description is whether, given the specificity in the warrant, a violation of personal rights is likely. Johnson, 541 F.2d at 1313; United States v. Muckenthaler, 584 F.2d 240, 245 (8th Cir. 1978).

In the instant case, the affidavit reflected that officers were seeking evidence relating to drug trafficking activity. The affiant, a DEA agent with extensive experience in narcotics investigations, discussed the methods utilized by drug traffickers in conducting their activities. The agent noted that drug traffickers often placed assets in the names of others, and often maintained books, receipts and other records pertaining to their drug activity at their residence. The agent noted that drug traffickers also typically maintained assets, records pertaining to assets, and monetary instruments. The affidavit reflected that individuals involved in drug trafficking typically maintain lists of names of associates.

The warrant in this case authorized the seizure of "[a]ny and all evidence related to drug trafficking including, but not limited to," and then set forth categories of evidence subject to seizure.

The first listed category subject to seizure included:

6

>Any and all tax records, books, records, receipts, bank statements, and records, money drafts, letters of credit, money orders, and cashier's checks, receipts, passbooks bank checks, lease agreements, loan records, documents and/or keys relating to safe deposit boxes and other items evidencing the obtaining, secreting, transfer, and/or concealment of assets, and the obtaining, secreting, transfer concealment and/or expenditure of money gained through drug trafficking, including but not limited to, paper and computer formats.

Another category of items to be seized listed evidence related to travel, including: "Any and all records, tickets, notes, schedules, receipts, and other items relating to intrastate, interstate, and foreign travel, including but not limited to, paper and computer formats, and packages."

The warrant authorized the seizure of evidence identifying individuals who might be connected to the conspiracy, including: "Any and all address and/or telephone books and records reflecting names, addresses, and/or telephone numbers, including but not limited to, paper and computer formats."

The warrant authorized the seizure of records of narcotics activity, including: "Any and all books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchase, and distribution of controlled substances, including but not limited to, paper and computer formats."

Finally, the warrant authorized the seizure of evidence relating to assets derived from drug trafficking activity, including: "Any and all United States currency and financial instruments, including stocks and bonds which are evidence of the receipt, transfer, and secreting of assets."

The Fourth Amendment's specificity requirement has been construed by the courts to provide a practical margin of flexibility in the degree of specificity required in search warrant descriptions. The Eighth Circuit has stated that the standard used to determine the adequacy of the warrant description is one of "practical accuracy," and that the degree of specificity may necessarily vary according to the circumstances and types of items involved. Johnson, 541 F.2d at 1313, 1314. "Where the precise identity of goods cannot be ascertained at the time the warrant is issued, naming only the generic class of items will suffice." Id.; see also United States v. Peters, 791 F.2d 1270, 1278 n. 3 (7th Cir. 1986); United States v. DeLuna, 763 F.2d 897, 908 (8th Cir. 1985).

7

The categories of items to be seized from defendant Pope's residence were described with as much specificity as possible, given the nature of the case. The categories of items identified to be seized provided for officers to reasonably ascertain and identify that place to be searched and the items to be seized. The items to be seized were all items that could be admissible evidence useful in obtaining a conviction, otherwise known as "evidence of crime." Consequently, the seizing officers' discretion was narrowly channeled to the specific category of items identified, thus making a violation of defendant Pope's rights unlikely. Pope's claim that the warrant lacked "particularity" is without merit.

*Affidavit Sufficiently Established Probable Cause*

As set forth above, this court has determined that the information obtained through interception of wired communications is not subject to suppression, and thus, was properly relied upon in determining probable cause.

Further, defendant Pope's challenge to the relied-upon statements of a confidential informant, as unreliable, does not establish a lack of probable cause.

When an affidavit is based in substantial part on information from an informant, the informant's reliability, veracity and basis of knowledge are relevant considerations; however, are not independent, essential elements in finding probable cause. Illinois v. Gates, 462 U.S. 213, 230 (1983); United States v. Ross, 713 F.2d 389, 393 (8th Cir. 1983). The court has recognized that this standard permits, "for example, an informant's clear basis of knowledge [to] be balanced against, rather than automatically overruled by, that informant's lack of a 'track record' of reliability." United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986). Moreover, the "totality of the circumstances" is the determining standard of probable cause. United States v. Ross, 713 F.3d 389, 393 (8th Cir. 1983).

In the instant case, the affidavit provided information from a confidential informant whose identity was known to law enforcement, and who had first-hand knowledge of Pope purchasing bulk marijuana from Rodebaugh. The information was significantly corroborated by numerous intercepted telephone conversations which indicated Pope was buying dealer quantities of marijuana, as well as other corroborating information. Significant corroboration by other sources, as well as the known confidential informant's basis of knowledge being first hand, establish the reliability of the information provided by the confidential informant. The totality of

the circumstances provides clear evidence of Pope's ongoing involvement in drug activity, and the affidavit supporting the search warrant established a probable cause to believe that evidence related to drug trafficking would be found in Pope's residence in July 2005.

Based upon the foregoing, the affidavit established probable cause for the issuance of a warrant to search the residence of defendant.

*Good Faith Exception.*

Further, even if the affidavit failed to establish probable cause, evidence obtained as a result of the search of defendant's residence cannot be excluded because the search was based upon officers' good-faith reliance on the judicially authorized search warrant. United States v. Leon, 468 U.S. 897 (1984); United States v. Moore, 41 F.3d 370, 376 (8th Cir. 1994). The good-faith exception allows evidence obtained pursuant to a search warrant, later found to be invalid, to be admissible if the executing officers acted in good faith and in objectively reasonable reliance on the warrant. United States v. Leon, 468 U.S. at 922.

An officer's reliance on a search warrant is determined unreasonable, and thus, the good-faith exception does not apply when (1) the judge issuing the warrant was misled by information in an affidavit that the affiant knew was false or should have known was false except for his reckless disregard for the truth; (2) the issuing judge wholly abandoned his judicial role; (3) the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant is so facially deficient that executing officers cannot reasonably presume it to be valid. Id. at 923; see also United States v. Simpkins, 914 F.2d 1054, 1057 (8th Cir. 1990).

When assessing the objective good faith of police officers executing a warrant, the court looks at the totality of circumstances. United States v. Simpkins, 914 F.2d at 1057. In the absence of allegations that the affiant gave false information to, or of misconduct on the part of, the issuing judge, the determination is based upon whether an objectively reasonable officer could have believed the seizure valid. Id.

In the instant case, there is no evidence that the authorizing judge was misled or abandoned his judicial role. Further, the warrant application and affidavit were not so lacking in indicia of probable cause, or the warrant so facially deficient that reliance upon the search warrant was unreasonable. The court finds reliance on the search warrant by executing officers

9

to be reasonable and in objective good faith; therefore, the good-faith exception applies to the evidence seized from defendant's residence.

*Execution of Search Warrant*

Defendant seeks to suppress evidence seized in his home, citing illegal execution of the search warrant for noncompliance with Fed. R. Crim. P. 41. Defendant cites execution of the search warrant at 5:57 a.m., three minutes before the time of 6:00 a.m. authorized in the search warrant.

Noncompliance with Rule 41 prerequisites does not automatically require the exclusion of evidence in a federal prosecution. United States v. Brown, 584 F.2d 252, 258 (8th Cir. 1978). In United States v. Burgard, 551 F.2d 190, 193 (8th Cir. 1977), the Eighth Circuit adopted the prejudicial error rule set forth in United States v. Burke, 517 F.2d 377, 386-87 (2d Cir. 1975), regarding violations of Rule 41, and determining whether or not suppression of the evidence is warranted. In Burke, the court held that suppression of the fruits of the search is not required absent a showing of (1) "prejudice in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed," or (2) "evidence of intentional and deliberate disregard of a provision in the Rule." United States v. Burke, 517 F.2d at 386-87.

Defendant Pope has not established that he was prejudiced in any way because the search occurred three minutes before the authorized time, nor has he shown that officers acted with intentional and deliberate disregard of a provision in the rule. Defendant Pope has failed to establish a basis for suppressing evidence seized during the search of his residence. See United States v. Schoenheit, 856 F.2d 74 (8th Cir. 1988) (although nighttime search of defendant's farm for marijuana did not comply with Rule 41, suppression of evidence seized was not warranted).

**Conclusion**

Defendant Pope's motions seeking suppression of intercepted wire communications and evidence seized from his residence should be denied.

IT IS, THEREFORE, RECOMMENDED that defendant Pope's motions to suppress evidence and intercepted wire communications be denied [162, 163].

Under 28 U.S.C. § 636(b)(l), the parties may make specific written exceptions to this recommendation within ten (10) days. If additional time is needed, a motion for an extension of time must be filed within ten days. The motion should state the reasons for the request. See Nash

v. Black, 781 F.2d 665, 667 (8th Cir. 1986) (citing Thomas v. Arn, 474 U.S. 140 (1985)); Messimer v. Lockhart, 702 F.2d 729 (8th Cir. 1983).  Failure to make specific written exceptions to this report and recommendation may result in a waiver of the right to appeal.

Dated this 20th day of February, 2007, at Jefferson City, Missouri.

/s/ *William A. Knox*

WILLIAM A. KNOX
United States Magistrate Judge